

FILED

AUG 1 0 2021

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

## United States District Court
### Eastern District of North Carolina
### Western Division

**Case No.** _____

(To be filled out by Clerk's Office only)

Matthew Aaron Safrit

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

Inmate Number 1019077

# COMPLAINT

*(Pro Se Prisoner)*

-against-

Drew Stanley

_____

_____

Jury Demand?
☐ Yes
☒ No

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section IV. Do not include addresses here.)*

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

---

## I. COMPLAINT

*Indicate below the federal legal basis for your claim, if known. This form is designed primarily for pro se prisoners challenging the constitutionality of their conditions of confinement, claims which are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).*

☑ 42 U.S.C. § 1983 (state, county, or municipal defendants)

☐ Action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) (federal defendants)

☐ Action under Federal Tort Claims Act (United States is the proper defendant; must have presented claim in writing to the appropriate Federal agency and received a notice of final denial of the claim pursuant to 28 U.S.C. § 2401(b))

## II. PLAINTIFF INFORMATION

Matthew Aaron Safrit
Name

1019077
Prisoner ID #

Nash Correctional Institution
Place of Detention

PO Box 600
Institutional Address

Nashville                    NC                    27856
City                         State                 Zip Code

## III. PRISONER STATUS

*Indicate whether you are a prisoner or other confined person as follows:*

☐ Pretrial detainee  ☐ State  ☐ Federal
☐ Civilly committed detainee
☐ Immigration detainee
☑ Convicted and sentenced state prisoner
☐ Convicted and sentenced federal prisoner

## IV.   DEFENDANT(S) INFORMATION

*Please list the following information for each defendant. If the correct information is not provided, it could result in the delay or prevention of service. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.*

Defendant 1:   Drew Stanley
               Name

               Warden
               Current Job Title

               2869 US Highway 64 A
               Current Work Address

               Nashville              NC              27856
               City                   State           Zip Code

               Capacity in which being sued: ☑ Individual ☑ Official ☑ Both

Defendant 2:   N/A
               Name

               _____
               Current Job Title

               _____
               Current Work Address

               _____
               City                   State           Zip Code

               Capacity in which being sued: ☐ Individual ☐ Official ☐ Both

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: Nash Correctional Institution

Date(s) of occurrence: February 26th, 2020 – Currently and Continuing

State which of your federal constitutional or federal statutory rights have been violated:

Over A year of sleep deprivation has violated my Eigth Amendment right to be free from cruel and unusual punishment.

*State here briefly the FACTS that support your case. Describe how each defendant was personally involved in the alleged wrongful actions, state whether you were physically injured as a result of those actions, and if so, state your injury and what medical attention was provided to you.*

FACTS:

1. NCDPS staff have a duty to protect the health and safety of the inmate population.

> Who did what to you?

2. Both the CDC and the FDA say that adults need seven or more hours of sleep at night, and that anything less can cause very serious health problems such as "an increased risk of obesity, type-2 diabetis, high blood pressure, heart disease and stroke, poor mental health, and even death.

3. The Defendant, Warden of Nash Correctional Institution (NCI), has failed to carry out his duty to protect

my health and safety by causing the physical injury of sleep deprivation for over a year.

4. NCDPS Policy and Procedure (P&P) Ch. F, § 1000 mandates three (3) formal head counts for inmates (one "prior to breakfast and before first shift relief"; one "midday ... between the hours of 11:00 AM and 5:00 PM"; and "an evening count... between 11:00 PM and 12:00 AM (midnight)" when inmates are locked down "for the night").

5. NCI conducts five (5) formal head counts each day.

6. NCI's five formal head counts are at (approximately) 4:30-5:00 AM; 8:45-9:15 AM; 1:45-2:15 PM; 6:15-6:45 PM; and 10:45-11:15 PM. All hereafter times are approximations.

7. Before 2/26/2020, all inmates had to be sitting up to show that they were alive during all counts <u>except</u> the 10:45-11:15 PM count (during which inmates were allowed to remain asleep so long as they were observed to be breathing), and were not woken until the morning count, allowing inmates to get seven or more hours of sleep.

8. On 2/26/2020, the Defendant decreed that all inmates at NCI must be sitting up at the 10:45-11:15 PM count.

9. Because of the above decree, there is a "wake-up call" announcement at 10:45 PM, and officers come on the block to count at 11:00 PM while (usually) yelling "Count time!" at the tops of their lungs. At this count time, inmates who were not woken by the "wake up call" or "count time" announcements are woken by officers shouting, officers hitting the inmate's bunk, and/or beating on the sleeping inmate's cell door in order to make them sit up for count: these actions ensure I am not asleep at this time.

10. Because of the Defendant's 2/26/2020 mandate, it is now impossible for NCI inmates to get more than 5.45 hours of sleep at night without being intentionally woken by officer's actions such as those mentioned in the above paragraph, which has directly caused me sleep deprivation for over a year.

11. Both the CDC and the FDA say that a person's sleeping area needs to be both quiet and dark.

12. Flourescent lights come on for the morning count, remain on until 9:00/10:00 PM (save for during summer months, wherein lights are sometimes turned off during the day to reduce heat), and come back on during the 10:45-11:00 PM count. Therefore, I can only get a maximum of approximately 5.30-5.45 hours of uninterrupted darkness in which to sleep in.

13. While it is true that the cell/dorm lights go off at approximately 9:00/10:00 PM (respectively) every night, which makes it possible for inmates in cells to get approximately 7.15 hours of

is interrupted by the 10:45-11:15 PM count. If I go to sleep at 9:00 PM, when the cell lights go out, yet am woken up at 10:45-11:15 PM by an officer yelling and/or banging on my cell door, I am not able to go back to sleep immediately, and may stay awake for another hour or two trying to go back to sleep, which enforces the effect of sleep deprivation by only allowing me 5.15-6.15 hours of sleep at night with an interruption.

14. Inmate activity and/or officer announcements take place from the morning count untill 11:30 PM (sun-thurs) and from the morning count until 12:30 AM (fri, sat, holidays). These facts create an environment of excessive noise, allowing for only approximately 5.15 hours of sleep (sun-thurs) without noise and 4.15 hours of sleep without noise (fri, sat, holidays), which has the effect of enforcing sleep deprivation. on me.

15. Nightly rounds are conducted after inmate population is locked down and/or asleep for the night wherein some officers flash lights in inmate's faces, causing them to be woken up at any given time. Officers shining their flash lights in my face at any given time during the night wakes me up, and has the effect of enforcing sleep deprivation.

16. While it is true that officer's need to flash their lights into dark rooms to see

4

follow that officers need to shine their lights directly into inmates faces. If officers did not shine their lights directly in my face at night, their actions would not wake me up, and therefore these actions involving flash lights would not contribute to my sleep deprivation.

17. Because of the above prison conditions, inmates at NCI never get more than 5.15 hours of sleep without noise or lighting Sun-Thurs; no more than 4.15 hours of sleep without noise or lighting Fri, Sat, or on holidays; and this sleep can be interrupted at any given time by an officer flashing their light in an inmate's face. All of these conditions are mutually enforcing my sleep deprivation, and have been doing so for over a year.

18. As stated in paragraph 2, the CDC and the FDA say that "poor mental health" is a actual and/or potential side effect of the physical injury of sleep deprivation.

19. I have a history of mental health problems, some of which involves depression and/or suicidal thoughts/behavior, and anxiety.

20. Because of the persistent mental anguish and abject misery I have suffered because I have had to endure the physical injury of sleep deprivation for so long, my depression and/or suicidal thoughts/behavior has become a reoccuring episode since the Defendant's 2/26/2020 mandate because my only reprieve (sleep) is not being allowed to last as long as necessary for me to have healthy cognitive functioning, and thus fix my mental crises.

21. Because of the startling nature in which NCI officers have started waking people up at the 10:45-11:15 PM count after the Defendant's decree, my anxiety has increased.

22. The increased state of anxiety I now suffer because of the above actions and/or sleep deprivation has resulted in an increased fear of being startled awake by officers banging on my door. This fear has made it virtually impossible for me to go to sleep before the 10:45-11:15 PM count is conducted because my fear of being startled awake will not allow my body to fully vest before it is finished.

23. The increased fear/anxiety claimed in the above paragraph has caused me to be periodically woken up out of sleep at night because I hear banging on my cell door even though no one is actually there (to my knowledge).

24. Because of these heightened anxiety episodes mentioned above and/or the overall problems I suffer from through the physical deprivation of my sleep, I am now taking sleep medications per recommendation of NCI psychologists.

25. I would not be having these episodes resulting from heightened anxiety, nor would I be taking sleep medication, if the Defendant's 2/26/2020 mandate had not physically deprived me of sleep for so long a period of time and/or caused officers to start acting like they do during the 10:45-11:15 PM

26. Sleep is a basic life necessity.

27. Renowned psychologists Sarah Grison and Michael S. Gazzaniga state that sleep helps with "restoration of the body, preservation from harm, and support for memory and learning" (Psychology for Your Life: Third Edition. W.W. Norton & Co. 2019).

28. In regards to paragraph 27, sleep helps the body heal itself by letting "the body, including the brain, rest and repair itself" by releasing "growth hormone" from the "endocrine system" while "replinish [ing] energy stores," "strengthen [ing] the immune system," and "strengthening neural connections that serve as the basis of learning" (Ibid., 105-106).

29. Not being able to get seven or more hours of sleep at night is (per the CDC and FDA) an actual and/or potential danger to my health and safety; moreover, this danger will only grow larger as time goes on with the Defendant's current count-time activity in place.

30. In regards to paragraphs 27 and 29, "most studies find that two or three days of sleep deprivation have little effect"; however, "[b]y contrast, a long period of sleep deprivation decreases mental abilities" and is "dangerous and potentially disastrous" (Ibid., 106). Therefore, enduring over a year of sleep

deprivation is dangerous, and I am thus in a dangerous situation because of the Defendant's

2/26/2020 Mandate.

31. I have made both formal and informal complaints to NCI staff which the Defendant is responsible for and/or specifically to the Defendant himself for over a year, yet the Defendant has failed to act on all accounts.

32. According to NCDPS P&P ch. G §. 0305, the "Facility Head" (who is the Defendant in this case) "will appoint one or more screening officers to review grievances." What is more, P&P ch. A §. 0105 states that the Defendant (as he is the NCI warden) has "responsib[ility] for the overall operations of the facility." Thus said, the Defendant is responsible for ensuring that inmate grievances filed at NCI which raise serious issues are taken care of.

33. On NCDPS inmate grievance #3710-2020-2CL-- 00073, wherein I brought up very serious issues related to sleep deprivation shortly after the Defendant's 2/26/2020 mandate took place, the Defendant's appointed screening officer stated that because neither "North Carolina Policy" and/or "any federal case" mandates that inmates get any "certain amount of hours of sleep" they were justified in continuing to implement the 2/26/2020 mandate even though my grievance was supported by clinical research which proved (using empirical data) that the 2/26/2020 mandate created a serious threat to inmate health and safety. Therefore, the Defendant, through his apointees, has shown he is more concerned with his policy being in effect than he is actual human lives (that

is, my health and safety).

34. After finding federal cases which state that sleep deprivation is cruel and unusual punishment, NC DPS inmate grievance #3710-2020-3CF--13730 was filed on 11/10/2020 which cited said federal cases as support for a policy change which grants inmates at NCI enough sleep (that is, seven to eight hours) to protect their health and safety.

35. As a response to the grievance mentioned in paragraph 34, NCI grievance respondents apointed by the Defendant cited the count-time policy as recorded in NCI's Standard Operating Procedures Manual (S.O.P.) as their step-one response to this grievance.

36. The above response was no more than an attempt to dismiss this grievance without taking action to fix the problem being grieved (showing again that the Defendant, through his appointees, is more concerned with his policies than inmate's health and safety); and, what is more, the count-times that were cited as NCI SoP were false.

37. The count times cited in the response under consideration in paragraph 36 state that NCI conducts their morning count at 5:30 AM. NCI only counted at 5:30 AM approximately nine (9) times between the 2/26/2020 mandate and the 11/10/2020 grievance currently in question. Therefore, this response, aside from making it appear that inmates are only complaining about

missing 30 minutes of sleep (that is, 11:00 PM-
5:30 AM is 6½ hours), is a blatant lie.
What is more, the step-two grievance
examiner (also appointed by the Defendant)
agreed with this lie, and fortified its
'truth' on the official record by stating
that "the count time procedures are being
followed according to the policy and SOP's."

38. From the 2/26/2020 mandate unto the
11/10/2020 grievance currently under discussion
is approximately 257 days. In these approximately
257 days, and upon my knowledge and belief,
NCI only counted on or after 5:30 AM
nine (9) times; NCI counted on or before
5:00 AM approximately 132 times; and
the remaining **116** days NCI counted between
5:05 and 5:25 AM. Therefore, it is not
correct to say NCI counts at 5:30 AM.

39. On grievance # 3710-2021-3CU--00146,
I complained about issues related to sleep
deprivation on 5/12/2021. The grievance
respondent cited a false SOP schedule as
did the grievance mentioned above.

40. From the 2/26/2020 mandate until the
end of the 2020 year (12/31/2020) is approximately
310 days. Out of these 310 days, nine (9)
Morning Counts were on or after 5:30 AM while
176 (that is, more than half of the 310
days) were at 5:00 AM or earlier. What is

132 days) the majority of the morning counts were conducted between 4:45 AM and 5:00 AM. Since the overwhelming majority of counts conducted at NCI during the morning count were at 5:00 AM or earlier, NCI does not count at 5:30 AM, and both the grievances responses and SOP manuals are wrong.

41. With the above under consideration, I responded on the grievance mentioned in paragraph 39 with the statement "11:00 PM - 5:30 AM is only 6 1/2 hours, this does not resolve the problem." However, rather than fix this problem, the grievance examiner for step two lied on the official grievance form and responded by saying "the count was moved from 11:30 PM to 11:00 PM to help accommodate with the sleep deprivation."

42. The step-two response cited in paragraph 41 has multiple problems. For one, I was not complaining about an 11:30 PM count (the count was cited as a "10:45 - 11:00 PM" count in my grievance complaint) because NCI does not conduct the count I was complaining about at 11:30 PM. For two, my grievance remedy was for NCI to Move the Morning count to approximately 6:30 AM —— this was not addressed. For three, the response is clearly a disingenuous one in order to make it appear NCI has resolved the complaint. And for four, this grievance examiner, Curtis Ward Jr., told me

11

Case 5:21-cv-03796-JFM Document 19 Filed 08/16/21 Page 14 of 22

grievance —— the Defendant is "Administration" at NCI.

43. Because of the aforementioned actions of the Defendant's appointed grievance respondents which he is responsible for, the Defendant has shown himself deliberately indifferent to his duty to protect (and (or) my health and safety by failing to act in a way that protects my health and safety in light of a problem that has been mentioned on official NCDPS documents in his facility, and/or by allowing and/or encouraging disingenuous responses on the grievances filed in his facility, and/or by not providing relief for the sleep deprivation and its potential and/or actual risks which are being caused by his policies if they are not changed.

44. On 7/21/2020, I wrote a personal letter to the Defendant using in-house mail wherein I requested an audience with him to speak about the "imminent physical/mental health problems which arise from sleep deprivation" which his policies were causing, and which likewise stated what I thought at the time was a possible and minimally invasive remedy to the problem. The Defendant did not respond.

45. On 2/19/2021, I wrote a personal letter to the Defendant using in-house mail wherein I explicitly stated to the Defendant the actual and/or potential side effects

which are known to arise from sleep deprivation and I explicitly stated that the Defendant's count-time policies are directly causing sleep deprivation (and are "very dangerous"). The Defendant did not respond.

46. In reference to the two above paragraphs, the Defendant has shown himself deliberately indifferent to his duty to protect my health and safety and/or my health and safety in general by failing to act in a way that protects my health and safety in light of the problem being brought to his direct attention by direct correspondence to his person.

47. Because NCDPS P&P ch. A §. 0105 gives the Defendant "responsib[ility] for the overall operations of the facility"; moreover, by admission of the Defendant's appointed grievance examiners (grievance # 3710-2020-2CL-00073) that "[t]he facility head is responsible for establishing procedures for informal and form[al] counts including such details of how and when counts are conducted and requirement of offenders to be in a specific location during count"; the Defendant has the power to modify NCI count-time schedules in a way that allows inmates, such as myself, to get seven or more hours of sleep at night, thereby protecting my health and safety.

48. While it is true that NCDPS P&P ch. F §. 1002 states that inmates must "show body movement in response to the officer's

does not mandate that the morning count be conducted as early as 4:30-5:00 AM, only "before breakfast" and "before shift change" (P&P ch. F §.1000). What is more, because P&P ch. F §.1000 explicitly allows for eight (8) hours between the night time count and the morning count, it is therefore possible that the Defendant (in consideration with his abilities as claimed in paragraph 47) can create a count-time schedule that grants inmates, such as myself, seven or more hours of sleep.

49. Upon reason and belief, most other NCDPS Prisons are allowing inmates to sleep through the last night-time count, which gives inmates the ability to get seven or more hours of sleep and thus protect their health and safety.

50. Because the Defendant is not allowing me to get the proper amount of sleep suggested by the CDC and FDA, I am, as stated above, developing mental health problems that are affecting my daily activities by causing me to feel sluggish, fatigued, have a loss of appetite, and carry the burden of depression, all of which affect my ability to stay focused on my school work and work as a participant in NCI's Field Ministry/ Bachelor's Degree Program.

51. Neither the Defendant, nor his appointed grievance examiners, have provided me with any justifiable penological need that warrants depriving me from getting

the necessary amount of sleep at night to protect my health and safety.

52. Upon reason of belief, the Defendant is failing to provide remedies to the physical injury of sleep deprivation which he is causing without penological justification even though it is within his power and within the bounds of P & P able to be fixed because he has a deliberately indifferent state of mind towards his duty to protect inmate health and safety and/or inmate health and safety in general, which is evidenced by the Defendant's statements to inmates that "if they don't like" the current conditions, they can "get on a bus."

53. The actual and/or potential mental and/or physical health risks which sleep keeps people safe from shows that the Defendant is causing me actual harm by depriving me of the basic human need of adequate sleep, which is sufficiently serious, by way of his policies. The Defendant's failure to act in light of direct and/or indirect knowledge that his policies are creating a serious risk to my health and safety show that the Defendant is deliberately indifferent to his duty to protect my health and safety and/or my health and safety in general. Therefore, the Defendant has violated my Eighth Amendment right to be free from cruel and unusual punishment by meeting both the objective and subjective standards for cruel and unusual punishment.

Wherefore, because the Defendant has violated my

Eighth Amendment right to be free from cruel and unusual punishment, the Plaintiff moves for Injunctive Relief which restores my Eighth Amendment rights by making the Defendant modify his count-time policies in a way that gives me the ability to get seven to eight hours of sleep at night.

Wherefore, because the Defendant has caused me physical harm which has serious actual and/or potential effects on my health and safety for over a year and has not refrained from doing so in light of alternate possibilities because he is deliberately indifferent, the Plaintiff moves for Punitive Damages in excess of twenty-five thousand dollars ($25,000).

This 25th day of July, 2021.

Matthew A. Safrit
Pro-Se Litigant
Nash Correctional Inst
#1019077
Box 600
Nashville, NC 27856

## VI.    ADMINISTRATIVE PROCEDURES

*WARNING: Prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions. 42 U.S.C. § 1997e(a). Your case may be dismissed if you have not exhausted your administrative remedies.*

Have you filed a grievance concerning the facts relating to this complaint?    ☒ Yes    ☐ No
   If no, explain why not:

_____

_____

_____

_____

_____

Is the grievance process completed?    ☒ Yes    ☐ No
   If no, explain why not:

_____

_____

_____

_____

## VII.    RELIEF

*State briefly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.*

See paragraphs on pages 15 and 16 for relief pleadings.

_____

_____

_____

_____

## VIII.  PRISONER'S LITIGATION HISTORY

*The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in forma pauperis in federal court if that prisoner has "on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. §1915(g).*

Have you brought any other lawsuits in state or federal court while a prisoner?  ☐ Yes  ☑ No

      If yes, how many?  _____

Number each different lawsuit below and include the following:

- Name of case (including defendants' names), court, and docket number
- Nature of claim made
- How did it end? (For example, if it was dismissed, appealed, or is still pending, explain below.)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## IX. PLAINTIFF'S DECLARATION AND WARNING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.**

***Each Plaintiff must sign and date the complaint and provide prison identification number and prison address.***

7/25/2021
Dated

Plaintiff's Signature

Matthew Safrit
Printed Name

1019077
Prison Identification #

Box 600     Nashville     NC     27856
Prison Address     City     State     Zip Code