IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CT-03235-M

MATTHEW A. SAFRIT,                )
                                  )
            Plaintiff,            )
                                  )
v.                                )        ORDER
                                  )
DREW STANLEY,                     )
                                  )
            Defendant.            )

On August 10, 2021, Matthew A. Safrit ("plaintiff"), a state inmate proceeding *pro se* and without prepayment of fees, filed a complaint under 42 U.S.C. § 1983. See [D.E. 1, 2, 5].

Plaintiff subsequently filed various motions for leave to amend and supplement the complaint, see [D.E. 6, 7, 15], to appoint counsel, Mot. [D.E. 8], for issuance of subpoenas, Mot. [D.E. 11], for a temporary restraining order ("TRO") and preliminary injunction, Mot. [D.E. 13], for judicial notice, Mot. [D.E. 18], and to expedite review, Mot. [D.E. 22].

The court GRANTS IN PART plaintiff's motions to amend and supplement the complaint, and for judicial notice, [D.E. 6, 7, 15, 18], to the extent that these motions seek to amend the complaint. See Fed. R. Civ. P. 15(a)(1); see also United States v. Winestock, 340 F.3d 200, 203 (4th Cir. 2003) (noting that courts "classify *pro se* pleadings from prisoners according to their contents, without regard to their captions.").

Next, in his motion to appoint counsel, plaintiff alleges the issues in the case are complex, he is indigent, he lacks legal experience or access to a law library, his case is potentially meritorious, and his efforts to obtain counsel have been unsuccessful. See Mot. [D.E. 8] at 2–5.

No right to counsel exists in civil cases absent "exceptional circumstances." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds by Mallard v. U.S. Dist. Court, 490 U.S. 296 (1989). "Exceptional circumstances" that contemplate appointment of counsel in *pro se* civil cases arise when a plaintiff lacks capacity to represent himself; this is a determination by the court that "hinges on [the] characteristics of the claim and the litigant." Whisenant, 739 F.2d at 163.

Contrary to plaintiff's assertions, this case is not complex. Because his filings indicate he has the capacity to represent himself, plaintiff fails to demonstrate "exceptional circumstances" meriting appointment of counsel, cf. id., and the court DENIES the motion to appoint [D.E. 8].

Next, because defendants have not been served with the summons and complaint, the court DENIES as premature the motion for issuance of subpoenas [D.E. 11].

Next, because the court now conducts its initial review, the court DENIES AS MOOT the motion to expedite [D.E. 22].

Pursuant to 28 U.S.C. § 1915A, the court now conducts its initial review of the complaint, as amended, and, for the reasons discussed below, dismisses the action for failure to state a claim.

Legal Standard:

When a prisoner seeks relief in a civil action from a governmental entity or officer, a court must dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a), (b)(1). A frivolous case "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Legally frivolous claims are "based on an indisputably meritless legal theory and include claims of infringement of a legal

interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Factually frivolous claims lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of a pleading is flexible, and a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). A *pro se* plaintiff's pleading, however, must contain "more than labels and conclusions," see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008), and the court need not accept as true any legal conclusions or unwarranted factual inferences, see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Further, a plaintiff also "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

Plaintiff's Filings:

Plaintiff's initial complaint names as the sole defendant Nash C.I. Warden Drew Stanley ("Stanley") and generally alleges violations of his Eighth Amendment rights, from February 26, 2020, to the present. Compl. [D.E. 1] at 3–5. Plaintiff specifically alleges, among other things: the North Carolina Department of Public Safety ("DPS") mandates three formal headcounts a day–

3

prior to breakfast and before first shift relief, midday between 11 a.m. and 5 p.m., and in the evening between 11:00 p.m. and midnight; Nash C.I. conducts five formal headcounts a day– between 4:30 and 5 a.m., 8:45 and 9:15 a.m., 1:45 and 2:15 p.m., 6:15 and 6:45 p.m., and 10:45 and 11:15 p.m.; prior to February 26, 2020, "all inmates had to be sitting up to show that they were alive during all counts except the 10:45-11:15 p.m. count (during which inmates were allowed to remain asleep so long as they were observed breathing), and were not woken until the morning count, allowing inmates to get seven or more hours of sleep [sic]"; on February 26, 2020, Stanley implemented a new policy requiring inmates to be sitting up at the 10:45-11:15 p.m. headcount; under this new policy, officers make a "wake-up call" announcement at 10:45 p.m., "come on the block to count at 11:00 p.m. while (usually) yelling 'count time!' at the top of their lungs," and inmates that are still sleeping "are woken by officers shouting, officers hitting the inmate's bunk, and/or beating on the sleeping inmate's cell door in order to make them sit up for count [sic]"; due to this new policy, "it is now impossible for [Nash C.I.] inmates to get more than 5.45 hours of sleep at night without being intentionally woken by officer's actions"; the new policy has caused plaintiff "sleep deprivation" for over a year; both the Centers for Disease Control ("CDC") and the Food and Drug Administration ("FDA") "say that a person's sleeping area needs to be both quiet and dark"; fluorescent lights come on for morning count and "remain on until 9:00/10:00 p.m." except when the lights are sometimes turned off during the daytime in summer months to reduce heat, and come back on again during the 10:45-11:15 p.m. headcount; he "can only get a maximum of 5.30-5.45 hours of uninterrupted darkness"; cell lights go off at 9:00 p.m. and dorm lights go off at 10:00 p.m. such that inmates in cells can get "approximately 7.15 hours of darkness until the morning count" that is interrupted by the 10:45-11:15 p.m. headcount; he sometimes has

4

difficulty getting back to sleep after the nighttime headcount, thus allowing him "5.15-6.15 hours of sleep at night with an interruption"; inmate activities and officer announcements take place from morning count until 11:30 p.m. on Sunday through Thursday, and from the morning count until 12:30 a.m. on Friday, Saturday and holidays; during night rounds, after inmates are locked down or asleep, some officers flash lights in inmates' faces, and this wakes him up when it happens to him; these conditions, combined, allow him 5.15 hours of sleep without noise or lighting on Sunday through Thursday and 4.15 hours of such sleep on Friday, Saturday, and Holidays; the CDC and FDA say poor mental health is a potential side effect of sleep deprivation; he has a history of mental health problems including depression, suicidal thoughts, and anxiety; due to sleep deprivation, his "depression and/or suicidal thoughts/behavior has become a reoccurring episode since" the implementation of Stanley's policy on Feb. 26, 2020; his "anxiety has increased" because of the "startling nature" of the 10:45-11:15 p.m. headcount and he is now taking psychologist recommended sleep medications; various studies show that long periods of sleep deprivation are unhealthy; responses to his grievances regarding the sleep policy are inaccurate as to count times and did not provide him relief; on the days he has tracked, more than half of the morning counts occurred before 5:00 a.m.; his request to move the morning count to 6:30 a.m. was not addressed; he wrote Stanley twice "about the 'imminent physical/mental health problems which arise from sleep deprivation'" and that these policies cause sleep deprivation, but he received no response; DPS policy gives Stanley responsibility "for the overall operations of the facility" and the ability to modify count time procedure to allow for seven or more hours of sleep; "upon reason and belief, most other DPS prisons are allowing inmates to sleep through the last night-time count which gives inmates the ability to get seven or more hours of sleep"; due to lack

5

of sleep, plaintiff is "developing mental health problems that are affecting [his] daily activities by causing [him] to feel sluggish, fatigued, have a loss of appetite, and carry the burden of depression [sic]" that affects his ability to "stay focused on [his] school work"; and Stanley has stated "to inmates that 'if they don't like' the current conditions, they can 'get on a bus [sic].'" Id. at 5–18. Plaintiff argues that Stanley's "failure to act in light of direct and/or indirect knowledge that his policies are creating a serious risk to [plaintiff's] mental health and safety show that [Stanley] is deliberately indifferent to his duty to protect [plaintiff's] health and safety" in violation of his Eighth Amendment rights. Id. at 18. For relief, plaintiff seeks an injunction directing Stanley to modify count-time policies to ensure plaintiff has "the ability to get seven to eight hours of sleep at night," and "punitive damages in excess of twenty-five thousand dollars." Id. at 19.

The amended complaint mostly repeats the initial complaint's allegations but adds as defendants Todd Ishee ("Ishee") and Erik Hooks ("Hooks"), corrects some earlier misstatements, informs the court about his medication regimen, and describes DPS regulations and his grievances. See Mot. [D.E. 6]; see also Am. Compl. [D.E. 6-1] ¶24(a)-(e) (noting his ill effects of taking melatonin for sleep), ¶33(a)-(e) (describing grievances and arguing the new policy endangers inmate health and safety due to sleep deprivation), ¶34(a) (citing Harper v. Showers, 174 F.3d 716 (5th Cir. 1999)), and Merrit v. Hawk, 153 F. Supp. 2d 1216 (D. Colo. 2001), for the proposition that sleep is a "basic life necessity"), ¶37(a)-(c) (noting discrepancies between count times stated in grievance responses and actual count times, and inquiring why Stanley has not adjusted count times "when he knows inmate health and safety are in danger"), ¶45(a)-(b) (describing letters and conversations with Assistant Superintendent Taleena Lee ("Lee") who was aware of his sleep concerns and informed Stanley), ¶¶60–90 (noting the DPS grievance procedure includes both

6

Director of Prisons Ishee and DPS Secretary Hooks, asserting that North Carolina Supreme Court Justice Anita Earls informed plaintiff that she forwarded plaintiff's article regarding COVID-19 and the DPS grievance procedure to members of a Task Force for Racial Equity in Criminal Justice of which Hooks was a member, and arguing that both Ishee and Hooks "had direct knowledge of both the very serious health concerns" raised in plaintiff's grievances but "did absolutely nothing to fix the problems," thus tacitly authorizing Stanley's policies).

The second motion to amend merely corrects a correspondence date. Mot. [D.E. 15] at 1.

In his motion for judicial notice, plaintiff seeks the court's consideration of various attachments including facts about sleep from the CDC and FDA, Stanley's February 26, 2020, count-time memo, a handwritten log of Nash C.I. count times, his grievances, his letters to Stanley and Assistant Superintendent Lee, a reply from the Nash C.I. psychologist about plaintiff's sleep complaints, his article regarding COVID-19 and Justice Earls' response, the DPS policies and procedures, the affidavit of a fellow inmate also alleging sleep issues, and various state-law materials. See Mot. [D.E. 18]; see also Mot. Attach. [D.E. 18-1, 18-2, 18-3].

Discussion:

Plaintiff's claim, distilled, is that the Nash C.I. nighttime headcount procedure, combined with noise, lights, and the earliness of the morning headcount, deny him sufficient uninterrupted sleep, in violation of the Eighth Amendment's prohibition on cruel and unusual punishments.

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The first prong requires that "the

7

deprivation of [a] basic human need was objectively sufficiently serious." Id. (quotation and emphasis omitted). The second prong requires a prisoner to show that "the officials acted with a sufficiently culpable state of mind." Id. (quotation and emphasis omitted); see Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.").

The sleep deprivation alleged here is not sufficiently serious to satisfy the objective prong of an Eighth Amendment claim. See Hudson v. McMillian, 503 U.S. 1, 8 (1992) (noting the objective prong of an Eighth Amendment claim is "contextual and responsive to contemporary standards of decency" (citation omitted)); De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (noting only "extreme deprivations" – *i.e.*, a "serious or significant physical or emotional injury resulting from the challenged conditions" or a substantial risk thereof – satisfy the objective component of Eighth Amendment claims); Strickler, 989 F.2d at 1379; see also Chavarria v. Stacks, 102 F. App'x 433, 437 (5th Cir. 2004) (finding a "policy of 24–hour illumination does not violate the Eighth Amendment"); Lowther v. Harrington, No. CV 20-00343 JAO-KJM, 2020 WL 6472644, at *4 (D. Haw. Nov. 3, 2020) (finding inmate's claim that headcounts precluding eight uninterrupted hours of sleep failed to allege an extreme deprivation); Goolsby v. Cnty. of San Diego, No. 17CV564-WQH-NLS, 2019 WL 140792, at *2–3 (S.D. Cal. Jan. 8, 2019) (finding inmate failed to state a cognizable sleep deprivation claim where the "procedures alleged in the complaint are incidental to incarceration, reasonably justified, and do not pose a substantial risk to an inmate's safety"); Johnson v. Wilson, No. CV 1:18-00416, 2018 WL 8618660, at *7 (S.D.W. Va. Apr. 11, 2018) (collecting cases for proposition that continuous lighting near bunk, disturbing

8

sleep, was not an "extreme deprivation" under the Eighth Amendment); cf. Matthews v. Holland, No. 114CV01959SKOPC, 2017 WL 1093847, at *3 (E.D. Cal. Mar. 23, 2017) (finding the Eighth Amendment's objective prong satisfied as to sleep deprivation where, for over a year, guards "used a metal bar to loudly bang and hit another metal object on inmates' cell doors which let out a loud beep or whistle," at recurring "5, 10, 15, and 20 minute intervals, 24 hours a day, every day").

Alternatively, even presuming that plaintiff's alleged sleep deprivation was objectively substantially serious, because he fails to plausibly allege that Stanley, Ishee, and Hooks acted with the requisite culpable state of mind, he likewise fails to satisfy the subjective component of a viable Eighth Amendment deliberate indifference claim. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"); Strickler, 989 F.2d at 1379; De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (surviving initial review requires a plausible claim both "(1) that the deprivation of a basic human need was objectively sufficiently serious, and (2) that subjectively the officials acted with a sufficiently culpable state of mind." (quotation and alterations omitted)); see also Armour v. Davis, No. 6:18CV535, 2020 WL 2850140, at *16 (E.D. Tex. June 1, 2020) (noting a plaintiff failed to allege defendants' culpable state of mind as to sleep deprivation where, "[e]ven taking his allegations as true, he offers nothing to suggest that the sleep disturbances of which he complains are done in an unnecessary or wanton manner in order to prevent him from sleeping rather than resulting from activities necessary" to manage the prison in which he resides).

Plaintiff's allegations are substantially distinguishable from cases finding prisoner sleep deprivation claims potentially cognizable. See, e.g., Walker v. Schult, 717 F.3d 119, 122, 126

9

(2d Cir. 2013) (finding plausible sleep deprivation claim that inmate's five cellmates made constant, loud noise inside the cell all night); Harper, 174 F.3d at 717, 720 (noting conditions "designed to prevent sleep . . . might violate the Eighth Amendment," and finding nonfrivolous a retaliatory sleep deprivation claim when, after attempting escape, inmate was moved next to "psychiatric patients who scream, beat on metal toilets, short out the power, flood cells, throw feces, and light fires, resulting in [the] loss of sleep for days at a time"); Keenan v. Hall, 83 F.3d 1083, 1090–91 (9th Cir. 1996), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998) (denying defendants' summary judgment motion on claims of constant illumination and inmate noise causing sleep issues); Antonelli v. Sheahan, 81 F.3d 1422, 1433 (7th Cir. 1996) (finding cognizable sleep deprivation claim where noise "occurred every night, often all night"); Garrett v. Thaler, 560 F. App'x 375, 378–79 (5th Cir. 2014) (finding sleep deprivation plausibly alleged where inmate only had four hours of scheduled sleep, during which he was awakened for headcounts, and he had "to choose between eating and sleeping"); Garber v. Conway, No. 1:15-CV-00123-AT-JCF, 2015 WL 13777720, at *5 (N.D. Ga. Mar. 19, 2015) (finding inmate alleged a plausible sleep deprivation claim where lights out was midnight, "sometimes there is a standing count then," he is "woken up between 3:30 and 4 a.m. for breakfast," and again for standing count around 7:40 a.m.), report and recommendation adopted, No. 1:15-CV-00123-AT-JCF, 2015 WL 13777721 (N.D. Ga. Aug. 14, 2015); Merritt, 153 F. Supp. 2d at 1222 (denying defendants' motion for summary judgment on sleep deprivation claim alleging, after testifying against guards and inmates, plaintiff experienced retaliation "in the form of physical assaults, false disciplinary reports, exposure to inmate enemies, thefts of property, deprivation of food, sleep, medical care, adequate clothing and shelter, fresh air and exercise, and repeated verbal threats and harassment").

In sum, plaintiff's alleged sleep deprivation evinces mere discomfort or unpleasantness and does not rise to the level of an Eighth Amendment claim. See Hudson, 503 U.S. at 9 ("Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation" (internal quotation marks and citation omitted)); Rhodes v. Chapman, 452 U.S. 337, 349 (1981) (noting "the Constitution does not mandate comfortable prisons"); Bell v. Wolfish, 441 U.S. 520, 547 (1979) ("Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); see also Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."); Covarrubias v. Foxworth, No. 6:17CV191, 2018 WL 817322, at *6 (E.D. Tex. Feb. 8, 2018) (finding inmate sleep disruptions due to "loud slamming doors, roster counts, lay-in and mail calls, and early breakfast" allege mere discomfort, not a constitutional violation).

Next, although plaintiff moves for a TRO and a preliminary injunction as to the February 26, 2020, Nash C.I. headcount policy change, he fails to demonstrate a likelihood of success on the merits, extraordinary circumstances, clear entitlement to the relief, or that he is likely to suffer irreparable harm in the absence of such relief. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); see U.S. Dep't of Labor v. Wolf Run Mining Co., 452 F.3d 275, 281 n.1 (4th Cir. 2006) (applying the same standards for a TRO and a preliminary injunction); Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009) (noting that the Supreme Court has rejected the

11

standard allowing a "plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." (quotation omitted)), vacated on other grounds, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam); Taylor v. Freeman, 34 F.3d 266, 268–69 (4th Cir. 1994) (noting that courts only grant injunctive relief involving the management of prisons in extraordinary circumstances).

Finally, because plaintiff's complaint cannot be cured by amendment, dismissal is appropriate, see Goode v. Cent. Virginia Legal Aid Soc'y, Inc., 807 F.3d 619, 628 (4th Cir. 2015).

Conclusion:

For the reasons discussed above, the court: GRANTS IN PART the motions to amend, supplement, and for judicial notice [D.E. 6, 7, 15, 18] to the extent that these motions amend the complaint; DENIES the motion to appoint counsel [D.E. 8]; DENIES the motion for subpoenas [D.E. 11]; DENIES the motion for a TRO and preliminary injunction [D.E. 13]; DENIES AS MOOT the motion to expedite [D.E. 22]; and DISMISSES the complaint for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). The clerk shall close the case.

SO ORDERED, this 26th day of July 2022.

RICHARD E. MYERS II
Chief United States District Judge